IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JAMES PRYSE, an individual,

      Plaintiff,

v.

FURNITURE ROW COLO, LLC, a Colorado limited liability company;
FURNITURE ROW USA, LLC, a Colorado limited liability company; FURNITURE
ROW BC, INC., a Colorado corporation; BIG SUR WATERBEDS, INC dba
FURNITURE ROW OUTLET, a Colorado corporation; SOFA MART, LLC, a
Colorado limited liability company,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

      COMES NOW, Plaintiff, JAMES PRYSE, by and through undersigned

counsel, Stinar & Zendejas, PLLC, and brings this action against Defendants

FURNITURE ROW COLO, LLC, FURNITURE ROW USA, LLC, FURNITURE

ROW BC, INC., BIG SUR WATERBEDS, INC dba FURNITURE ROW OUTLET,

SOFA MART, LLC, and alleges:

## I. INTRODUCTION

      1.    This is an action by Plaintiff, a former employee for Defendants

FURNITURE ROW COLO, LLC, FURNITURE ROW USA, LLC, FURNITURE

ROW BC, INC., BIG SUR WATERBEDS, INC dba FURNITURE ROW OUTLET,

SOFA MART, LLC (collectively herein referred to as "Defendants"), which is

necessitated by Defendants' discrimination against Plaintiff, as well as Defendants' failure to pay Plaintiff's owed wages, pursuant to the Colorado Anti-Discrimination Act C.R.S. § 24-34-402 (hereafter "CADA"), Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq.* (hereafter "CWCA"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (hereafter "ADEA"), and the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. 201, *et seq.* (hereafter "FLSA"), and especially § 16 of the FLSA (29 U.S.C. § 216(b)), brought under both the court's federal question jurisdiction, 28 U.S. Code § 1331, as well as the court's supplemental jurisdiction, 28 U.S. Code § 1367.

2.     On March 4, 2020, Plaintiff filed his charge with the Equal Employment Opportunity Commission ("EEOC") asserting age discrimination against Defendants.

3.     On April 14, 2020, the Colorado Civil Rights Division  ("CCRD") emailed, and Plaintiff subsequently received, a "Notice of Right to Sue" for CCRD Charge No. 541-2020-01628 (**Exhibit A**) which asserted age discrimination.  This Notice entitles Plaintiff to initiate this action within 90 days of receipt of said notice.

4.     Plaintiff has satisfied all private, administrative and judicial prerequisites necessary for this action.

## II. PARTIES

5.     Plaintiff is an individual who at all relevant times resided in El Paso County, Colorado.

6.     Defendants are either Colorado limited liability companies or Colorado corporations, all having the same headquarters at 5641 N Broadway, Denver, Colorado, 80216.

7.     Upon information and belief, Defendants operated, owned, managed, advertise on behalf of, or otherwise controlled the business (including, but not limited to its employees, accounting, facilities, finances, property, and other business needs) commonly referred to and named "Furniture Row" located in Colorado Springs, Colorado 80919 at the address of 6310 Corporate Centre Circle, 6320 Corporate Centre Circle, 6330 Corporate Centre Circle, 6340 Corporate Centre Circle, 6350 Corporate Centre Circle, and/or 6360 Corporate Centre Circle (hereafter collectively referred to as "Furniture Row" or "Store").

8.     At this time it is unknown the terms and extent of the agreement(s) between Defendants to actually operate, own, manage, advertise on behalf of, or otherwise control the Store (including, but not limited to its employees, facilities, accounting, finances, property, and other business needs).

9.     Plaintiff reserves the right to amend his complaint to include additional defendant(s) not presently known to Plaintiff.

10.     Upon information and belief and at all relevant times Defendants regularly employed over 20 employees at the Store.  Upon information and belief and at all relevant times Defendants regularly employed over 200 employees across the western United States.

## Defendants as Joint / Dual Employers of Plaintiff

11.     As pled herein and upon information and belief, at all relevant times, Defendants were joint employers of Plaintiff.  Defendants shared or co-determined matters governing the essential terms and conditions of Plaintiff's employment. Defendants directed, controlled, or maintained the right to control and supervise the administrative, managerial, and employment duties of Plaintiff.  To the extent necessary, Defendants, or any of them, held authority, direction, and control over other Defendants, which served as agents of such principal Defendants and workers, like Plaintiff, in the operation of the Store.  In addition, Defendants, in their capacity as principal and/or master(s) of their agent(s), is/are joint employers of Plaintiff and are directly and/or vicariously responsible for each others' acts.   In addition, the sales, receipts, or other financial measurements of each of these Defendants were used, aggregated, or otherwise accounted for to compute Plaintiff's commission-based compensation.  In addition, at all relevant times Plaintiff regularly performed work for each of these Defendants, in a material capacity, affected each Defendants profitability and success at the Store.

12. "[A] plaintiff who is the employee of one entity may seek to hold another entity liable by claiming that the two entities are joint employers. This joint-employer test acknowledges that the two entities are separate, but looks to whether they co-determine the essential terms and conditions of employment." *Bristol v. Bd. of Cty. Comm'rs of Cty. of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir. 2002). Further, "a plaintiff who is the employee of one entity may seek to hold another entity liable by arguing that the two entities effectively constitute a single employer. *Id.* The concept of joint employment should be "defined expansively." *Chao v. A-One Med. Svcs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003).

**Defendants are Alter Egos of Each Other / Joint and Several Liability**

13. Plaintiff is informed and believes and thereon alleges that Defendants are and at all relevant times were alter egos of each other or may otherwise be treated as not just dual employers of Plaintiff, but also alter egos of each other and one-in-the-same, and as such being jointly and severally liable for their actions against Plaintiff.

14. Plaintiff is informed and believes and thereon alleges, that at all relevant times to this action there was a unity of ownership and interest by and between Defendants, such that any separateness between them has never existed.

15. Plaintiff is informed and believes and, on that basis, alleges that at all relevant times to this action each of the Defendants controlled, dominated, managed and operated each other of the Defendants for their owners sole benefit.

16.     Plaintiff is informed and believes and thereon alleges that at all relevant times to this action there exists such a unity of interest and ownership between the Defendants that the individuality and separateness of Defendants has ceased to exist.  The business affairs of Defendants are, and at all times relevant herein were, so mixed and intermingled that the same cannot reasonably be segregated, and the same are in inextricable confusion.  Each of the Defendants, and at all times relevant herein was, used by each of the other Defendants as a mere shell and conduit for the conduct of certain of the other Defendants' affairs.

17.     For example, upon information and belief, Defendants commingled their key business assets and liabilities, including but not limited to their executives, managers, employees, benefits, corporate office space, accounting, debts, management, marketing, finances, and inventory.

18.     Throughout Plaintiff's employment with Defendants, each of the Defendants held positions of power, control, and authority over Plaintiff in the workplace.

19.     Throughout Plaintiff's employment with Defendants, each of the Defendants paid and/or contributed to payment of Plaintiff's compensation, as well as directed, controlled, and maintained the right to control and supervise the administrative, managerial, and employment duties of Plaintiff.

20.     Throughout Plaintiff's employment with Defendants, each of the Defendants directed, controlled, and maintained the right to control and supervise

6

the administrative, managerial, and employment duties of Plaintiff.  Upon information and belief, each of the Defendants routinely inquired into and was given access into the Furniture Row's business and financial measurements, as well as could and did set Plaintiff's financial goals by which Plaintiff was measured. Upon information and belief, throughout Plaintiff's employment, each of the Defendants could and did provide meaningful input into Plaintiff's receipt of benefits, as well as his specific and overall performance. Throughout Plaintiff's employment, each of the Defendants could and did have meaningful input into any decision to promote, retain, or terminate Plaintiff.

21.     Throughout Plaintiff's employment with Defendants, Defendants would examine the Store, provide meaningful feedback and input into Plaintiff's performance, and treated Plaintiff as their own employee.

22.     At all relevant times and for all practical purposes, Defendants, and all of them, were Plaintiff's onsite supervisor.

23.     At all relevant times, Plaintiff had no choice but to follow or execute upon any of Defendants' orders, direction, or instruction without risk of termination, suspension, or other disciplinary action by Defendants against him.

24.     The recognition of the separate existence of each of the Defendants would not promote justice, in that it would permit Defendants to insulate themselves from liability to Plaintiff, and other creditors and employees who have

claims against them. Accordingly, Defendants constitute the alter ego of each other and the fiction of their separate existence must be disregarded.

### III. JURISDICTION

25. Jurisdiction is proper in the U.S. District Court for the District of Colorado pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 29 U.S.C. § 2617(a)(2). As pled herein and upon information and belief, the Court has federal question jurisdiction by virtue of the claims set forth herein, such as Plaintiff's ADEA and FLSA claims. Further, this Court has supplemental jurisdiction over Plaintiffs state law claims, such as Plaintiff's CADA and CAWA claims, pursuant to 28 U.S.C. § 1367.

### IV. VENUE

26. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2) as the actions giving rise to this action occurred in the State of Colorado.

27. Further, venue is proper in the Colorado Springs federal courthouse, given that Plaintiff is a resident of Colorado Springs, and the actions giving rise to this action occurred in Colorado Springs.

### V. GENERAL ALLEGATIONS

28. For approximately 26 years, Plaintiff worked for Defendants, or some form or combination of them.

29. For approximately 23 years, Plaintiff worked for Defendants, or some form or combination of them as a "manager."

8

30.     At all relevant times to this action, Plaintiff's position as "manager" was in title only as more than 80% of Plaintiff's time was spent performing non-managerial duties.

31.     At all relevant times to this action:

a. Plaintiff had no meaningful managerial authority over Defendants' employees (though he could listen and coach, he could not write up without his manager's approval);
b. Plaintiff could not hire or terminate Defendants' employees;
c. Plaintiff had no meaningful input into Defendants' hiring or termination decisions;
d.  Plaintiff did not have any meaningful independent judgment or discretion over what were essentially routine/repetitive tasks;
e. Defendants controlled and/or directed how Plaintiff worked, including the filing of paperwork;
f. Defendants required Plaintiff to seek authorization for any amount of order/requisition exceeding $250; and
g. Defendants controlled and/or directed Plaintiff's work hours.

32.     At all relevant times to this action:

a. Defendants always tracked Plaintiff's work hours;
b. Defendants required Plaintiff to work in excess of 40 hours per week;
c. Plaintiff regularly worked between 1 and 42 overtime hours per pay period;
d. Plaintiff worked an average of over 14 hours of overtime per pay period; and
e. Defendants never paid Plaintiff for the overtime hours he worked;
f. To the contrary, Defendants used the amount of hours Plaintiff worked against him by apparently dividing Plaintiff's "total pay" by the number of hours he worked, to arrive at an average wage per hour; and
g. Defendants knowingly engaged in an unwritten commission-based compensation scheme to steal and cheat Plaintiff out of his due and owing wages.

9

33.     A typical day for Plaintiff involved the following non-exempt duties: turn on lights, prepare coffee, count cash drawers, check previous day's sales/discounts, shovel snow (seasonal), drive to bank, review memos from corporate, review task list with all Defendants' staff, vacuum store, mop floors, clean doors, set price tags on Defendants' furniture if prices changed from corporate, check customer call backs, review receiving orders and product needing to be shipped, conduct inventory counts and recount if needed, bring product out of warehouse to floor, unbox and clean and vacuum and price product, provide customer service, take customer phone calls, reschedule or rearrange deliveries, move product in the return bin, pick up/empty trash in store and around building, move furniture/merchandise to different Store areas, sell to 5-10 customers daily, clean bathrooms, review sales/invoices, drive to bank to make deposits, assist in unloading trucks when needed, organize warehouse when needed, and unbox items for delivery when needed.

34.     At all relevant times to this action Defendants never maintained a written bona fide commission payment plan to compute Plaintiff's commission-based wages.

35.     At all relevant times to this action Defendants never provided to Plaintiff a written bona fide commission payment plan demonstrating how it computed Plaintiff's commission-based wages.

36.     At all relevant times to this action Plaintiff never signed a written bona fide commission payment plan demonstrating how Defendant computed Plaintiff's commission-based wages.

37.     A copy of Plaintiff's personnel file (137 pages, representing 26 years of employment) received from Defendants confirms that no such signed written bona fide commission payment plan ever existed for Plaintiff.

38.     At all relevant times to this action, without a signed, written bona fide commission payment plan, Defendants cannot demonstrate that at all times more than half of Plaintiff's compensation represented commissions on goods or services from any one defendant, and especially from Defendant BIG SUR WATERBEDS, INC, which was the entity named on Plaintiff's paystubs and was represented by Defendants as being Plaintiff's "employer" in his unemployment insurance claim.

39.     Further, at all relevant times to this action, upon information and belief, Defendant BIG SUR WATERBEDS INC, Plaintiff's alleged "employer" by Defendants, did not qualify as a "retail establishment" under the FLSA because less than 75% (if any) of Defendant BIG SUR WATERBEDS INC's gross annual revenues were sales to an end user vs. a wholesaler.

40.     On January 10, 2020, Defendants terminated Plaintiff's employment, via a letter allegedly authored and signed by Defendants' Regional Sales Manager, Patrick Mendoza.

41.     At the time of his termination, Plaintiff was 56 years old.

11

42.     At the time of his termination, Plaintiff was the only, if not the second to last individual working at Furniture Row, who was older than 40.  Although actual ages and correct name spellings are not entirely known, a snapshot of Furniture Row's workforce at the time of Plaintiff's termination was as follows:

    a.  Taggart Malone – 35
    b.  Andrew Wilczek – 25
    c.  Robert Glerup – 34
    d.  Kelsea Oneal – 22
    e.  Nathan Ortho – 23
    f.  Evelyn Sweeney – 26
    g.  Heather Pale – 29
    h.  Caleb LNU – 21
    i.  Tyler Smith – 35
    j.  Garrett Ross – 20
    k.  Jolan Lomeli – 34
    l.  FNU LNU (one new hire in "Living" section of Store) – 25
    m.  FNU LNU (second new hire in "Living" section of Store) – 25
    n.  Michael Lonubrake – 35
    o.  Nathalia Tucker – 35
    p.  Chris Espinoza – 38

43.     In the months and years prior to Plaintiff's termination of employment, Plaintiff observed Defendants hiring and preferring to hire younger, less experienced, and less costly employees, including from the benefits perspective (e.g. health insurance).

44.     In the months and years prior to Plaintiff's termination of employment, Plaintiff observed the changing face of Defendants sales force, which was a much younger sales force believed to have a better ability sell to younger individuals and families living in Colorado Springs.

45.     In terminating Plaintiff's employment via a letter dated January 10, 2020, Defendants included false allegations against Plaintiff, such "You have previously been counseled on multiple occasions for being retaliatory and abusing your management position with your staff...you continue to abuse your position by threatening your staff..."

46.     For approximately 23 years, Plaintiff served as Defendants' "manager."

47.     At no time during his 23-year tenure as "manager" was Plaintiff written up for being abusive, retaliatory, or threatening.

48.     At no time during his 23-year tenure as "manager" was Plaintiff "counseled" for being abusive, retaliatory, or threatening.

49.     Throughout his 23-year tenure as "manager" Plaintiff received awards for his performance and sales increases from Defendants.

50.     Prior to his January 10, 2020, termination of employment, Mr. Mendoza frequently complimented Plaintiff's work and success, saying he wished he had more "managers" like Plaintiff, and to just have Plaintiff "keep doing what you're doing."

51.     On December 10, 2010, in an email exchange, Mr. Mendoza commented to Plaintiff with over a dozen employees on copy, "What a young buck!" in response to a younger employee's comment, "Wow, Jim.  I was 6 years old when you were already selling furniture! ) happy to be on the same team with you, Mr.

13

Pryse! Congrats!"  This exchange began with Mr. Mendoza announcing to a dozen younger employees:

> What were you doing 26 years ago today?
> I will tell you this naughty boy [Plaintiff], who has made it to the good list was starting a career with FURNITURE ROW!
> I am so happy that I have had some of your time Mr. Pryse, it's been an honor, and I look forward to many more years together!
> CONGRATULATIONS JIM!

52.    At all relevant times to this action Plaintiff satisfactorily performed his job duties.

53.    Prior to his termination, and for at least the three (3) years prior to his termination, Plaintiff earned 100% commissioned wages that fluctuated (approximately based on his last year of earnings) between ~$1,000 and ~$7,000 per pay period (every two week) as well as health insurance, dental insurance, vision insurance, life insurance, 401k, 401k match, personal time off ("PTO"), Store discounts, and potentially other quantifiable benefits not presently known at this time.  For instance, at the time of his termination Plaintiff earned 4 weeks of paid vacation every year.

54.    Upon information and belief, Defendants replaced Plaintiff with a younger, less experienced worker, who is compensated at a rate considerably less than Plaintiff.

55.    On January 17, 2020, Plaintiff by and through his attorney sent a demand for wages, seeking payment of his due and owing overtime wages, seeking

14

upon a reasonable estimate of overtime hours owed, estimated at $100,000, not including interest.

56.    At no time have Defendants paid Plaintiff any of the overtime wages he demanded in his January 17, 2020 letter.

57.    At no time have Defendants paid Plaintiff any of the overtime wages he is owed.

58.    Shortly after his termination, Plaintiff filed for unemployment insurance.

59.    On January 30, 2019, Plaintiff was contacted by the Colorado Department of Labor and Employment and told that his unemployment insurance claim was being challenged by Defendant BIG SUR WATERBEDS, INC (the stated "employer" by Defendants) and thus would not immediately be approved.  Plaintiff was informed that Defendant BIG SUR WATERBEDS, INC had doubled down on the malicious and baseless allegations against Plaintiff presented in Mr. Mendoza's January 10, 2020 letter.  This information, which was not true, caused Plaintiff to suffer additional stress, anxiety, and other emotional distress.  Plaintiff responded to the Department and hoped that his economic wellbeing would not be further jeopardized by Defendants.

60.    As of the date of this Complaint, Plaintiff's claim for unemployment still has not been resolved, remains in limbo, and is undecided, which has caused

15

Plaintiff literally months of wholly avoidable emotional and economic distress as directly caused by Defendants.

61.     As of the date of this Complaint, despite his efforts to get a new job Plaintiff remains unemployed, and is suffering economic damages in an amount of his total compensation from Defendants, which is approximated at $140,000 per year plus benefits, estimated at 20% of his gross income or $28,000, for an economic loss of $14,000 per month, not including interest.

62.     As a consequence of Defendants' above-mentioned actions Plaintiff has suffered emotional damages.  For instance, Defendants' termination caused Plaintiff to suffer significant emotional damage, including the shame, frustration, embarrassment, stress, and anxiety caused and related to her termination and subsequent financial strain.

63.     As a consequence of Defendants' above-mentioned actions Plaintiff has suffered economic damage including back wages and compensation, loss of economic opportunities and professional growth, loss of insurance and benefits either not available on the open market or otherwise prohibitively expensive, and other forms of economic damage.   As an example, Defendants' termination caused Plaintiff to suffer the loss of his wages, as well as health, dental, vision, and life, insurance, 401k, 401k matching, and PTO accruing at 4 weeks per year (160 hours).

64.     As a consequence of Defendants' above-mentioned failures, statutory interest and penalties have accrued on the sums of money due but not paid to

Plaintiff, including as a result of Defendants failure to pay in response to the wage demand, back wages and compensation.

65.     As a consequence of Defendants' above-mentioned failures Plaintiff has been forced to retain counsel and pursue litigation, incurring costs and attorney's fees.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### ADEA 29 U.S.C. § 621, *et seq.* – Age Discrimination
### Against All Defendants

66.     Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

67.     At all relevant times, Defendants qualified as employers and Plaintiff qualified as Defendants' employee under the ADEA.

68.     At all relevant times, and as alleged above, Plaintiff was over the age of 40, and at the time of his termination of employment by Defendants was 56 years old.

69.     At all relevant times, and as alleged above, Plaintiff was performing his duties satisfactorily.

70.     As alleged above, Defendants terminated Plaintiff's employment on January 10, 2020.

71.     As alleged above, in the months and years prior to Plaintiff's termination of employment, Plaintiff observed Defendants hiring and preferring to hire younger, less experienced, and less costly employees, including from the benefits perspective (e.g. health insurance).

72.     As alleged above, in the months and years prior to Plaintiff's termination of employment, Plaintiff observed the changing face of Defendants sales force, which was a much younger sales force believed to have a better ability sell to younger individuals and families living in Colorado Springs.

73.     As alleged above, Defendants filled Plaintiff's position with a younger, less-qualified, less-experienced, and lower paid worker.

74.     Defendants violated the ADEA when they unlawfully terminated Plaintiff's employment because of his age (using performance as pretext) and replaced him with a younger, less-qualified, less-experienced, and lower paid worker.

75.     At all relevant times and as alleged above Defendants acted maliciously and willfully as they knew their conduct was prohibited by the law and/or Defendants showed a reckless disregard for whether their actions were prohibited under the law.

76.     As a direct and proximate result of Defendants' unlawful actions Plaintiff has suffered and will continue to suffer emotional distress as well as economic losses in an amount to be proved at trial.

18

77.     Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading

## SECOND CLAIM FOR RELIEF
### CADA C.R.S. § 24-34-402(1)(a) – Age Discrimination
### Against All Defendants

78.     Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

79.     At all relevant times, Defendants qualified as employers and Plaintiff qualified as Defendants' employee under the CADA.

80.     At all relevant times, and as alleged above, Plaintiff was over the age of 40, and at the time of his termination of employment by Defendants was 56 years old.

81.     At all relevant times, and as alleged above, Plaintiff was performing his duties satisfactorily.

82.     As alleged above, Defendants terminated Plaintiff's employment on January 10, 2020.

83.     As alleged above, in the months and years prior to Plaintiff's termination of employment, Plaintiff observed Defendants hiring and preferring to hire younger, less experienced, and less costly employees, including from the benefits perspective (e.g. health insurance).

19

84.     As alleged above, in the months and years prior to Plaintiff's termination of employment, Plaintiff observed the changing face of Defendants sales force, which was a much younger sales force believed to have a better ability sell to younger individuals and families living in Colorado Springs.

85.     As alleged above, Defendants filled Plaintiff's position with a younger, less-qualified, less-experienced, and lower paid worker.

86.     Defendants violated the ADEA when they unlawfully terminated Plaintiff's employment because of his age (using performance as pretext) and replaced him with a younger, less-qualified, less-experienced, and lower paid worker.

87.     At all relevant times and as alleged above Defendants acted maliciously and willfully as they knew their conduct was prohibited by the law and/or Defendants showed a reckless disregard for whether their actions were prohibited under the law.

88.     As a direct and proximate result of Defendants' unlawful actions Plaintiff has suffered and will continue to suffer emotional distress as well as economic losses in an amount to be proved at trial.

89.     Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

**THIRD CLAIM FOR RELIEF**
**Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq.* – Failure to Pay Overtime**
**Wages Owed**
**Against All Defendants**

90.     Plaintiff incorporates by reference the above paragraphs as if fully restated and realleged herein.

91.     At all times relevant to this action, and upon information and belief, Defendants were subject to the CWCA, Defendants qualified as Plaintiff's employers under the CWCA, and Plaintiff qualified as Defendants' employee under the CWCA.

92.     The CWCA, § 8-4-109, C.R.S., requires employers to pay all wages or compensation "due and payable" upon termination.

93.     The CWCA, § 8-4-122, C.R.S., provides all actions brought under the Act must be filed within "two years after the cause of action accrues," which is expanded to three years for "willful" violations.

94.     At the time of his termination on January 10, 2020, Plaintiff had earned overtime wages for the prior three (3) years equaling approximately $100,000.

95.     On January 17, 2020, Plaintiff by and through his attorney sent a demand for wages, seeking payment of his due and owing overtime wages, seeking upon a reasonable estimate of overtime hours owed, estimated at $100,000, not including interest.

21

96.     At no time have Defendants paid Plaintiff any of the overtime wages he demanded in his January 17, 2020 letter.

97.     At no time have Defendants paid Plaintiff any of the overtime wages he is owed.

98.     At all times relevant to this action, Defendants' refusal to timely pay Plaintiff his owed overtime wages was knowing, willful, and wanton, entitling Plaintiff to seek three (3) years of lost overtime wages.

99.     Defendants' failure to timely pay Plaintiff his vested and determinable wages is in violation of the Colorado Wage Claim Act, C.R.S. § 8-4-101, et seq.

100.     Because of Defendants' failure to respond to Plaintiff's wage demand (Defendants had 14 days to provide any payment in response to Plaintiff's January 17, 2020 wage demand), and false denial of the amount and validity of Plaintiff's wage claim, Plaintiff is entitled to a penalties associated with Defendants' failures to timely pay wages owed after a wage demand was made, including a penalty of 125% of the amount owed, or up to 10 days of Plaintiff's average daily earnings, whichever is greater, pursuant to C.R.S. § 8-4-109.  In addition, fines of up to $50 dollars per day commencing from the date that such wages first became due and payable may be assessed, pursuant to C.R.S. § 8-4-113.

101.     Defendants' failure to pay Plaintiff his vested and owing wages was willful, and therefore he is entitled to penalties pursuant to C.R.S. § 8-4-109.

22

102.    Given the amount of wages owed is over $2,000, Defendants may be found liable for wage theft pursuant to HB 1267.

103.    Plaintiff is entitled to an award of attorney fees pursuant to the CWCA, C.R.S. § 8-4-110.

104.    Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

## FOURTH CLAIM FOR RELIEF
### FLSA, 29 U.S.C. 201, *et seq.,* - Failure to Pay Overtime Wages Owed Against All Defendants

105.    Plaintiff incorporates by reference the above paragraphs as if fully restated and realleged herein.

106.    At all times relevant to this action, and upon information and belief, Defendants were subject to the FLSA, Defendants qualified as Plaintiff's employers under the FLSA, and Plaintiff qualified as Defendants' employee under the FLSA.

107.    Pursuant to section 255 of the FLSA "any action ... may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."

23

108.    At the time of his termination on January 10, 2020, Plaintiff had earned overtime wages for the prior three (3) years equaling approximately $100,000.

109.    On January 17, 2020, Plaintiff by and through his attorney sent a demand for wages, seeking payment of his due and owing overtime wages, seeking upon a reasonable estimate of overtime hours owed, estimated at $100,000, not including interest.

110.    At no time have Defendants paid Plaintiff any of the overtime wages he demanded in his January 17, 2020 letter.

111.    At no time have Defendants paid Plaintiff any of the overtime wages he is owed.

112.    At all times relevant to this action, Defendants' refusal to timely pay Plaintiff his owed overtime wages was knowing, willful, and wanton, entitling Plaintiff to seek three (3) years of lost overtime wages.

113.    Defendants' failure to timely pay Plaintiff his vested and determinable wages is in violation of the FLSA.

114.    Pursuant to section 216(b) of the FLSA, Defendants' violation of section 207 (overtime) entitles Plaintiff to a recovery in the amount of his unpaid overtime compensation and in an additional equal amount as liquidated damages.

115.   Alternatively, should liquidated damages not be awarded, the FLSA entitles Plaintiff to a recovery of prejudgment interest on all amounts awarded as to due and owing overtime wages.

116.   Pursuant to section 216(b) of the FLSA, Plaintiff is entitled to recover his reasonable attorneys' fees and costs in bringing the action. 29 U.S.C.A. §216(b).

117.   Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

WHEREFORE, Plaintiff prays for the following relief:

A.   Orders and judgments as requested;

B.   Nominal damages;

C.   Economic and compensatory damages, in an amount to be shown at trial;

D.   Consequential damages;

E.   Liquidated damages;

F.   Punitive or exemplary damages, in an amount to be shown at trial;

G.   Statutory penalties for failure to pay wages;

H.   Statutory penalties for a willful failure to pay wages;

I.   Costs and attorney's fees;

J.   Pre- and post-judgment interest at the highest rate allowed by law;

K.   All legal or equitable relief; and

L.   All other legal or equitable relief to which Plaintiff is entitled and/or the

court and/or jury deems just and proper.

## PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES TRIABLE TO A JURY.

Respectfully submitted this 16th day of April 2020.

*s/Christopher G. Wilhelmi*
Christopher G. Wilhelmi Reg. #50361
Attorney for Plaintiff

Stinar & Zendejas PLLC
121 East Vermijo Ave, Suite 200
Colorado Springs, CO 80903
E-mail: chris@coloradolawgroup.com
Phone: 719-635-4200
Fax: 719-635-2493