IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-01081-RPM-KMT

JAMES PRYSE, an individual,

    Plaintiff,

vs.

FURNITURE ROW COLO, LLC, a Colorado limited liability company; FURNITURE ROW USA, LLC, a Colorado limited liability company; FURNITURE ROW BC, INC., a Colorado corporation; BIG SUR WATERBEDS, INC. d/b/a FURNITURE ROW OUTLET, a Colorado corporation; SOFA MART, LLC, a Colorado limited liability company,

    Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND FOR ORDER COMPELLING ARBITRATION OR, IN THE ALTERNATIVE, TO STAY ACTION PENDING ARBITRATION**

Defendants Furniture Row Colo, LLC, Furniture Row USA, LLC, Furniture Row BC, Inc., Big Sur Waterbeds, Inc., and Sofa Mart, LLC ("Defendants") respectfully submit the following reply in support of their June 18, 2020 Motion to Dismiss and for Order Compelling Arbitration or, in the Alternative, to Stay Action Pending Arbitration (the "Motion").

**I.  INTRODUCTION.**

The law is clear that courts must refer matters to arbitration in the face of 1) a valid arbitration agreement, and; 2) an issue or dispute that falls within the scope of the agreement. Both conditions are satisfied here.

Plaintiff James Pryse ("Pryse") contends, however, that because some of the party Defendants are not signatories to the April 30, 2014 Agreement to Arbitrate (the "Agreement"),

the Agreement is not enforceable unless Defendants prove that the non-signatory Defendants are corporate affiliates of the signatory Defendant (Big Sur Waterbeds, d/b/a Oak Express), or admit that all of the Defendants are joint employers/alter-egos.  These arguments are contrary to law and, even if the law required all party plaintiffs or defendants to be parties to an arbitration agreement in order to enforce the same (which it does not), Pryse is equitably estopped from now contending that the separate corporate identities of the non-signatory Defendants somehow precludes arbitration.

Further, Pryse's arguments regarding the Agreement's unconscionability or invalidity are unfounded.  Contrary to Pryse's assertions, the Agreement 1) contains a savings/severability clause; 2) allows the parties to appeal an arbitrator's final order under the limited grounds contemplated by federal and state law; and 3) permits (and, indeed, requires) Pryse to recover mandatory, statutory attorney fee awards, assuming he prevails on his state wage and hour claims.  Pryse's arguments regarding the unconscionability of language precluding monetary awards for administrative actions (such as with the EEOC) is likewise moot since Pryse himself requested a notice of a right to sue from the EEOC and/or the CCRD, and this language could easily be severed from the Agreement, assuming it is unlawful (which it is not).

Last, Pryse's claims fall within the broad scope of disputes subject to arbitration (and, indeed, Pryse does not argue otherwise).  Thus, the Court should dismiss the action without prejudice and compel arbitration or, alternatively, stay the action pending the parties' arbitration of all claims asserted by Pryse.

**II.     ARGUMENT.**

Pryse does not dispute that the signatories to the Agreement are himself and "Big Sur Waterbeds, Inc.," which is a named Defendant.  *See* Dkt. 19 at p. 5.  Pryse does not dispute that as Pryse's former employer and a signatory to the Agreement, Oak Express has standing to enforce the Agreement.  *Id.*  Last, Pryse does not argue that his alleged claims are outside the scope of the Agreement.  *See generally* Dkt. 19.

Rather, Pryse argues that the Agreement must not be enforced because Defendants failed to present facts as to how the named Defendants besides Oak Express have standing to enforce the Agreement.  Dkt. 19 at pp. 4-5.  Similarly, Pryse has alleged that the Agreement itself is unconscionable, and therefore invalid.  *Id.* at pp. 6-9.  Neither argument has merit.

**A.      Pryse's Arguments Regarding the Non-Signatory Defendants and Their Lack of Standing to Invoke the Agreement Are Contrary to Law.**

Pryse essentially argues that the Court, at this time, must resolve the factual issue of whether the other Defendants besides Oak Express are "parents, subsidiaries, [or] affiliates" of Oak Express for purposes of applying the Agreement to those entities.  Dkt. 19 at p. 4.  Likewise, Pryse contends that because the Defendants failed to present any proof or theories justifying the non-signatory Defendants' invocation of the Agreement, the Defendants' Motion must be denied for that reason.  *Id.* at pp. 4-5.

Pryse's arguments are contrary to law governing the Court's simple, limited task in determining whether to refer this dispute to arbitration.  Section 3 of the Federal Arbitration Act ("FAA") broadly provides that if in any suit or proceeding brought in any of the courts of the United States "**upon any issue referable to arbitration** under an agreement in writing for such arbitration," the court in which the suit is pending, upon being satisfied that the issue involved in

such suit or proceeding is referable to arbitration, "**shall** on application of **one of the parties** stay the trial of the action . . . ."  9 U.S.C. § 3 (emphasis added).

Thus, under both federal and Colorado precedent, the Court's *only* task at this point is to determine 1) whether a valid arbitration agreement exists, and; 2) whether an issue or dispute before the Court is referable to arbitration under the agreement.  *See Dingo, Inc. v. Who Ya Gonna Call Bark Busters Pty., Ltd.*, 2013 WL 3357662, at *2 (D. Colo. July 3, 2013); *Vallagio at Inverness Residential Condominium Assoc., Inc. v. Metropolitan Homes, Inc.*, 2015 COA 65, ¶ 14 (court may refuse to compel arbitration "only upon a showing that there is no agreement to arbitrate or if the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision.").  The issue of the other non-signatory Defendants' status or corporate relationship to Oak Express is simply irrelevant at this point, as there is no doubt that 1) Oak Express and Pryse are parties to the Agreement; 2) Oak Express has applied to dismiss or stay the litigation under Section 3 of the FAA; 3) the Agreement is valid for the reasons set forth below, and; 4) Pryse's claims are within the scope of the Agreement.

> 1. **The FAA Does Not Limit Stays of Lawsuits to Arbitrations Between Only the Named Parties to an Arbitration Agreement.**

Assuming that the non-signatory Defendants' status is somehow relevant at this juncture, the Supreme Court has nonetheless noted that Section 3 of the FAA does not narrowly mandate stays of disputes only between parties to a written arbitration agreement (as Pryse contends), but rather that stays are also required in situations where arbitration provisions are made enforceable against, or for the benefit of, non-signatory third parties to the arbitration agreement under state contract law.  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009).  In any event, under the Agreement itself, Pryse agreed to arbitrate disputes or controversies relating to the

"**application** or interpretation of this Agreement." Dkt. 9-1 (emphasis added). Pryse's entire argument *against* arbitration is based on whether the Agreement even applies to the Defendants besides Oak Express. Dkt. 19 at pp. 4-5 (contending that Defendants were required to concede joint employer status in order to invoke the Agreement). Thus, the questions of whether the Defendants are joint employers for purposes of Pryse's substantive claims, or whether the Arbitration Agreement applies to the non-signatory Defendants, are questions reserved for the arbitrator under the Agreement. *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, --- U.S. ----, 139 S. Ct. 524, 530 (2019) (if a valid arbitration agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, the court may not decide the arbitrability issue).

The Court is simply not required to delve into the merits of this case and decide whether, in fact, the non-signatory Defendants to the Agreement may invoke the same, or whether the non-signatory Defendants were, in fact, joint employers of Pryse for purposes of arbitration. If Pryse's arguments were correct, a plaintiff employee could always defeat mandatory arbitration by naming the former employer's non-signatory corporate affiliates in employment lawsuits, notwithstanding that the arbitration agreement is otherwise valid, the employee and employer are both parties to the agreement, and the employee has alleged issues falling within the scope of the agreement. Such a result would clearly thwart federal and state public policies in favor of arbitration. *See* Dkt. 9 at pp. 3-5 (federal and state policies favoring arbitration).

## 2. The Dispute Must Be Referred to Arbitration Under Principles of Equitable Estoppel.

As noted, this dispute does not present an issue of a non-signatory to an arbitration agreement attempting to enforce the same, as Oak Express is a party to the Agreement along

with Pryse and has expressly invoked its application.[1]   However, even if the non-signatory status of the other Defendants is somehow still an issue, arbitration is further warranted under principles of equitable estoppel.  On one hand, Pryse contends that Oak Express and the other Defendants to this action are so interrelated that their separate corporate existences must be ignored under joint employer and alter-ego theories.  *See* Dkt. 1 ¶¶ 11-24.  Now, however, Pryse contends that the Defendants, apart from Oak Express, cannot seek arbitration because there is no proof that they are parents, subsidiaries, or affiliates of Oak Express.  Dkt. 19 at pp. 4-5.  In short, for purposes of the Complaint, Pryse contends the Defendants are one and the same but, for purposes of arbitration, Pryse contends they are not.

Courts have applied equitable estoppel principles under remarkably similar facts to require arbitration when a plaintiff simultaneously alleges that all defendants should be treated as one entity for liability purposes, but not for arbitration purposes.  *See Green v. Fishbone Safety Solutions*, 303 F. Supp. 3d 1086, 1098-99 (D. Colo. 2018) (no clear error in finding that the plaintiff was equitably estopped from avoiding arbitration with a non-signatory defendant when the plaintiff alleged that the signatory and non-signatory defendants were a single entity); *Bonner v. Mich. Logistics Inc.*, 250 F. Supp. 3d 388, 397-98 (D. Ariz. 2017) (non-signatory defendants entitled to invoke arbitration agreement under equitable estoppel principles because plaintiff alleged that the signatory and non-signatory defendants were joint employers for purposes of

---

[1] The inclusion of Oak Express's parents, subsidiaries, and affiliates into the Agreement is akin to the inclusion of such entities into release agreements, which are enforceable as to those affiliated parties notwithstanding that they may not be signatories to the release, simply because the releasing party was given consideration for the release— just as Mr. Pryse was given consideration for the Agreement in the form of continued employment and a mutual promise by Oak Express to arbitrate. *See Bath v. Equifax Information Services LLC*, 2019 WL 2375238, at *2-3 (D. Colo. May 10, 2019) (plaintiff agreed to release both the defendant and the defendant's parents, subsidiaries, affiliates, etc. in exchange for consideration).

their FLSA and state law claims). There is no doubt that the Defendants have detrimentally relied on Pryse's allegations of joint employer/alter-ego liability to invoke the Agreement and seek the relief requested in the Motion. *See Santich v. VCG Holding Corp.*, 2019 CO 67, ¶¶ 8, 11 (non-signatory party seeking to invoke an arbitration agreement under equitable estoppel grounds must show detrimental reliance). Thus, equitable estoppel principles mandate arbitration of this dispute in its entirety.

> **B.     The Agreement is Valid, and Pryse Has Alleged Multiple Issues and Disputes Within the Scope of the Agreement.**

Given that Oak Express and the other Defendants have the right to seek dismissal or a stay of this lawsuit in order to arbitrate Pryse's claims under the Agreement, the only questions remaining are whether the Agreement is valid and whether there are issues or disputes within the scope of the Agreement before the Court. Both questions must be resolved in the affirmative.

> **1.     Pryse's Arguments Regarding the Invalidity of the Agreement Are Misplaced.**

Pryse contends that the Agreement cannot be enforced because it is unconscionable. None of the justifications cited by Pryse support a finding of unconscionability.

As a threshold matter, and as noted, the Agreement itself delegates the issue of arbitrability to the arbitrator. Dkt. 9-1 (delegating issues of the application and interpretation of the Agreement to arbitration). Pryse has not challenged this delegation language as unconscionable and, therefore, the issues of whether the Agreement itself or certain provisions of the Agreement are unconscionable are questions reserved to the arbitrator and beyond the scope of the Court's review at this time. *See, e.g., Santich v. VCG Holding Corp.*, 2018 WL 3968879, at *4-6 (D. Colo. Aug. 20, 2018) (no procedural or substantive unconscionability challenge to the

arbitration agreement's delegation language, thereby leaving issues or arbitrability and unconscionability to the arbitrator).

Even if Pryse's unconscionability arguments are properly before the Court (rather than an arbitrator), they are nonetheless without merit. First, Pryse states that if any provision of the Agreement is found to be unconscionable, the entire Agreement must be invalidated. Dkt. 19 at pp. 6-7. Pryse completely ignores the Agreement's own savings and severability language: "If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force and effect." Dkt. 9-1. Courts permit the application of such savings clauses to save arbitration agreements that have otherwise-unconscionable terms. *See, e.g. Fuller v. Pep Boys—Manny, Moe & Jack of Delaware, Inc.*, 88 F. Supp. 2d 1158, 1162 (D. Colo. 2000) (court used nearly-identical savings language to strike a fee-shifting provision and uphold the arbitration agreement). Pryse's "all-or-nothing" reading of the Agreement is erroneous.

Second, Pryse argues that the Agreement's language regarding the "final and binding" nature of an arbitrator's award is unconscionable because it is inconsistent with AAA rules governing award modifications and federal/state law permitting limited appeals of arbitration awards. Dkt. 19 at p. 7. This argument is illogical. Federal and state courts expressly permit parties to agree that arbitration awards are final and binding. *See Ormsbee Develop. Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982) (parties agreed that arbitration award would be "final and binding," thereby limiting judicial review to "exceptional circumstances" such as arbitrator bias); *Foust v. Aetna Cas. & Ins. Co.*, 786 P.2d 450, 451 (Colo. Ct. App. 1989) ("An arbitration award is binding upon the parties" and the award can only be vacated, modified, or

corrected by the court for the limited grounds listed in C.R.S. §§ 13-22-223, -224). Nothing in the Agreement purports to waive Pryse's right to appeal or modify an award under the limited grounds permitted by law or AAA's rules. Pryse's contention that the "final and binding" language is somehow unconscionable or contrary to law is simply wrong.

Third, Pryse contends that the Agreement's language regarding attorneys' fees and costs unlawfully gives the arbitrator the right to side-step mandatory fee awards under the Colorado Wage Claim Act. Dkt. 19 at pp. 7-8. Again, this argument is contrary to the Agreement. The Agreement provides that the arbitrator has the authority to award any remedy or relief that a court could order or grant, which necessarily includes any mandatory attorney fee awards. Dkt. 9-1. The Agreement also holds the parties responsible for their own attorney fees "unless otherwise ordered by the arbitrator." *Id.* There is no language in the Agreement purporting to waive Pryse's right to mandatory attorney fee awards, should he prevail and should the statute at issue require the same and, indeed, the Agreement *requires* the arbitrator to apply federal and Colorado law to the parties' disputes, as applicable. *Id.* Pryse's unconscionability arguments on the issue of attorney fee awards are therefore also wrong.

Last, Pryse argues that the Agreement is unconscionable because it precluded Pryse from seeking monetary damages via administrative action. Dkt. 19 at p. 8. In actuality, the Agreement expressly permits Pryse to seek relief from any federal, state, or local agency. Dkt. 9-1. Similar language disclaiming monetary relief from such administrative actions has been upheld as permissible. *See, e.g. Franklin v. Cracker Barrel Old Country Store*, 2017 WL 7691757, at *7 (E.D. Mo. Apr. 12, 2017) (arbitration agreement containing language permitting the plaintiff to file administrative claims with the EEOC, etc., but forego monetary damages

9

from such claims, held valid).  In any event, even if the language is impermissible, the Supreme Court has noted that in the event an administrative agency like the EEOC pursues an enforcement action, an arbitration agreement between the employer and employee does not prevent the agency from seeking victim-specific relief if it so chooses.  *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 295-96 (2002).  More importantly, Pryse's arguments on this language are moot, as Pryse himself requested a Notice of Right to Sue from the EEOC and/or CCRD, thereby foregoing any administrative relief.  Dkt. 1-1 (Notice of Right to Sue issued on request).  Finally, even if the language regarding monetary relief via administrative actions is impermissible or unconscionable, this language can be severed from the Agreement without affecting the validity or enforceability of the remaining provisions.  *See* Dkt. 9-1 (savings and severability provisions); *Fuller*, 88 F. Supp. 2d at 1162.

Thus, the Agreement is not unconscionable and is otherwise valid, and Pryse has failed to meet his burden to show unconscionability (either procedural or substantive).  *See Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1371-72 (D. Colo. 2014) (party challenging arbitration agreement must prove procedural and substantive unconscionability under Colorado law).

### 2. Pryse Has Alleged Multiple Disputes Within the Scope of the Agreement.

Because the Agreement is valid, the only remaining question is whether a dispute currently before the Court falls within the scope of the Agreement.

Pryse's substantive claims present issues referable to arbitration under the Agreement. The Agreement's scope includes "any dispute, claim, or controversy . . . relating in any manner to [Pryse's] employment, compensation, termination from employment or the application or interpretation of this Agreement."  Dkt. 9-1.  Pryse directly challenges all of the Defendants'

practices regarding the terms and conditions of his employment, his compensation, and his termination. *See* Dkt. 1 (alleging, among other things, the Defendants' age discrimination under federal and state law relating to Pryse's employment/termination, and failures to pay overtime wages under federal and state law).

Further, the issue of whether Oak Express employed Pryse alone, or whether all of the Defendants employed Pryse under a joint employer or alter-ego theory, directly relates to Pryse's employment and, therefore, constitutes an issue referable to arbitration under the FAA. Thus, all of Pryse's claims, against all named Defendants, must be referred to arbitration because the Agreement is valid and Pryse has alleged issues that fall within the Agreement's scope.

### III. CONCLUSION.

For the foregoing reasons, the Defendants respectfully request that the Court dismiss Pryse's Complaint and enter an order compelling arbitration of his claims or, in the alternative, stay this action pending arbitration.

Dated: July 23, 2020

Respectfully submitted,

*s/ Emily Hobbs*
Emily Hobbs
Robert M. Thomas
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80201-8749
Phone: (303) 295-8584
Fax: (303) 672-6505
ehobbs@hollandhart.com
rmthomas@hollandhart.com

**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

  I hereby certify that on July 23, 2020 I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system to the following:

Christopher G. Wilhelmi
Stinar & Zendejas PLLC
121 East Vermijo Avenue, Suite 200
Colorado Springs, CO  80903
chris@coloradolawgroup.com

**ATTORNEYS FOR PLAINTIFF**

             *s/Brenda S. Proskey*
             Brenda S. Proskey
             Holland & Hart LLP

14997399_v3